UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARBONITE, INC., a Delaware corporation | X : : | Civil Action No. 1:16-cv-12646 |
| Plaintiff and Counterclaim Defendant, | : : | |
| v. | : : | OPPOSITION TO MOTION FOR PARTIAL |
| RAMPGREEN, INC., a Washington corporation, | : : | SUMMARY JUDGMENT AND APPLICATION TO DEFER |
| Defendant and Counterclaim Plaintiff | : : | JUDGMENT UNDER FED. R. CIV. P 56(d) |
| and | : : | |
| vCustomer Corp., a Washington Corporation | : : | |
| Defendant. | : X | |

The fundamental premise in the motion for partial summary judgment of defendant-counterclaim plaintiff Rampgreen, Inc. and defendant vCustomer Corporation (together, "vCustomer") (Docket No. 33) (the "Motion") is that plaintiff-counterclaim defendant Carbonite, Inc. ("Carbonite") is liable for an amount set forth in a letter, which amount vCustomer then refused to confirm by a requested invoice.  Indeed, vCustomer invites the Court to wade through a series of disputed facts under the Master Service Agreement ("MSA") and – vCustomer's unquestionable pre-existing breach of it – to find that, nevertheless, there can be no material issues of fact in dispute that Carbonite: (1) owed vCustomer $130,444.63 on an invoice never issued; (2) owed vCustomer another $32,655.37 for services not provided; and (3) must repay Rampgreen $20,362.20 in rebates, some of which should be clawed back and that balance of which were never applied to invoices Carbonite never paid, plus 18% interest on those amounts.  (Motion at 9-12).  Incomprehensible nonsense.

First, and most fundamentally, after the sale of vCustomer's business in 2012 and five years of silence, Rampgreen has not demonstrated that it has contractual privity with Carbonite to prosecute the counterclaims. Moreover, even at this early stage of the case in which the parties have not yet completed document exchanges and depositions have yet to be taken, the record is awash with disputed issues of fact over whether vCustomer was in pre-existing breach, whether Carbonite had an obligation to pay an invoice that was never raised, whether vCustomer is due estimated fees for services it did not render and, if so, how much, and what credits Carbonite was due under a Customer Rebate Agreement. Each of these issues of material fact by itself is sufficient for this Court to deny the Motion.

The Motion should also be denied under Fed. R. Civ. P. 56(d) on the independent ground that it is premature. Indeed, after extended settlement discussions ahead of a court-facilitated mediation that is scheduled for January, the parties are still in the early stages of discovery. vCustomer's document production is not due until after Carbonite's deadline to oppose the Motion and Carbonite may not take depositions until after January 1, 2018. As such, the Motion should also be denied to give Carbonite an opportunity to obtain discovery needed to more fully oppose the Motion.

## FACTUAL BACKGROUND

On April 11, 2008, Carbonite and vCustomer entered into the MSA. (Rampgreen Inc. and VCustomer Corp.'s Statement Of Undispute [sic] Material Facts ("vCustomer Statement") ¶ 1, Ex. 1 to Ex. C). The parties amended the MSA through a First Amendment to Master Service Agreement on July 12, 2010, and a Customer Rebate Agreement on April 5, 2011. (vCustomer Statement ¶ 1, Ex. 2 to Ex. C). Under the

MSA, vCustomer was to provide customer support service for Carbonite in return for a monthly fee.  (See MSA §§ 1, 3, 5).

vCustomer also agreed to protect Carbonite's Confidential Information:

> Each party agrees that the Confidential Information of the other Party will be held in confidence at least to the same extent and the same manner as each Party protects its own Confidential Information, but each Party agrees that in no event will less than reasonable care be used to protect the other Party's Confidential Information.

(MSA § 11.2).

The MSA defined Confidential Information to include:

> Any information obtained by vCustomer relating to an identified or identifiable Customer or potential Customer of Carbonite or its affiliates, including but not limited to its name, address, email address, date of birth, credit and payment information, or purchase history obtained by vCustomer in connection with providing Services to Carbonite (collectively "Customer Information").

(MSA § 11.1).  The MSA provided that "vCustomer shall be liable for any breach of the terms of [the MSA] by its Personnel."  (MSA § 11.2).  Carbonite terminated the MSA's length term on January 11, 2011 and thereafter, the parties proceeded on a month-to-month basis.  (Carbonite Statement Of Additional Facts In Dispute Under Local Rule 56.1 ("Carbonite Statement") ¶ 1).

On August 22, 2011, Carbonite learned that a vCustomer employee known as Irwin Keeler likely misappropriated confidential information of a Carbonite customer in breach of MSA § 11.  (Carbonite Statement ¶ 2).  Specifically, in violation of Carbonite's customer information security policies, Mr. Keeler failed to close a customer support session with a Carbonite customer while the customer entered his credit card information.  (Carbonite Statement ¶ 3).  A short while later, that customer's credit card was used to make fraudulent purchases in India.  (Carbonite Statement ¶ 5).  After a

very significant investigation, Carbonite confirmed this breach of its policies by Mr. Keeler through a recording of the customer support session. (Carbonite Statement ¶¶ 4-6). Based on this violation of Carbonite customer confidential information and a history of customer support failures by vCustomer personnel, on August 25, 2011 Carbonite terminated the MSA. (Carbonite Statement ¶ 8).

Meanwhile, on or about August 24, 2011, vCustomer issued an invoice to Carbonite for services performed in July 2011 in the amount of $168,638. (vCustomer Statement ¶ 21, Ex. 6 to Ex. C). Carbonite paid $100,206.00 of this invoice after deducting credits (also called "rebates") allowed by the Customer Rebate Agreement. (vCustomer Statement ¶ 22, Ex. 8 to Ex. C). On September 2, 2011, vCustomer issued an invoice to Carbonite in the amount of $169,965, which vCustomer claims includes amounts for work performed between August 1, 2011 and August 25, 2011, plus estimated fees vCustomer claimed it would have earned between August 26, 2011 and August 31, 2011 if Carbonite had not revoked vCustomer access to Carbonite systems. (vCustomer Statement ¶ 24, Ex. 7).

On October 4, 2011, Carbonite sent vCustomer a letter stating that it would pay $130,444.63 of the August Invoice once vCustomer sent a revised invoice for that amount. (vCustomer Statement ¶ 26, Ex. 8 to Ex. C). vCustomer never sent such a revised invoice and Carbonite never paid the $130,444.63. (vCustomer Statement Exs. 4-7) (invoices sent to Carbonite)). Rather, vCustomer sought to negotiate other amounts owed and issues surrounding Carbonite's termination of the Master Service Agreement. (Carbonite Statement ¶ 10). By December 1, 2011, Carbonite believed the parties had agreed upon all issues and sent vCustomer a draft agreement

memorializing their arrangement, including payment of $130,214.60 in return for full mutual releases.  (Carbonite Statement ¶ 11).  vCustomer never responded to this draft agreement and ceased communications with Carbonite until more than five years later.  (Carbonite Statement ¶ 12).

In 2012, however, it appears that vCustomer sold its operations for $27 million, although Carbonite never received formal notice under the MSA.  (Carbonite Statement ¶ 13).  Over four years later, on December 22, 2016, Carbonite received a demand letter from an unknown entity called "Rampgreen" claiming that it was vCustomer's successor-in-interest.  (Carbonite Statement ¶ 14).  After an attempt to resolve this demand, Carbonite filed the declaratory judgment action in this Court and eventually Rampgreen filed counterclaims, some of which are at issue in this Motion.[1]

## **LEGAL ARGUMENT**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Taylor v. Erna, No. 08-10534-DPW, 2009 WL 2146675, at *4 (D. Mass. July 14, 2009) (denying defendant's motion for summary judgment in part).  The burden is on the movant to show, based on the pleadings, discovery, disclosure materials, and affidavits, that there is no genuine issue as to any material fact *and* that the movant is entitled to judgment as a matter of law.  Taylor, 2009 WL 2146675, at *4.  A "genuine issue" is one that could be resolved in favor of either party, and a "material fact" is one that has the potential to affect the outcome of the case.  Taylor, 2009 WL 2146675, at *4.

---

[1] The Motion identifies vCustomer as a counterclaim plaintiff even though the Answer and Counterclaim reflect that the sole counterclaim plaintiff is Rampgreen.

5

The moving party has the burden of demonstrating that the evidence does not support the non-moving party's case. Taylor, 2009 WL 2146675, at *4. The summary judgment inquiry requires that the court "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Taylor, 2009 WL 2146675, at *4. Summary judgment is proper only when a single conclusion is plausibly inferable from the uncontradicted facts. Taylor, 2009 WL 2146675, at *4. If reasonable minds could differ as to the import of the evidence, summary judgment is not appropriate. Taylor, 2009 WL 2146675, at *4.

As demonstrated below, issues of material fact preclude vCustomer's summary judgment motion, including: (1) what entity owns the rights to any outstanding claims against Carbonite under the MSA; (2) whether Carbonite's performance was excused by vCustomer's pre-existing breach of the MSA; (3) what amounts were owed by Carbonite to vCustomer and why vCustomer never sent Carbonite an invoice for the purportedly undisputed amounts; and (4) whether and how much Carbonite is entitled to recoup from any amounts due Defendants based on Carbonite's damages in investigating and addressing the theft of customer credit card data.

Moreover, because this case is still in its early stages and the parties have not concluded discovery – or even commenced depositions, the Motion should be denied until discovery is completed and Carbonite is allowed to finish its discover regarding the facts at issue in the Motion. Fed. R. Civ. P. 56(d).

I.   THERE IS A MATERIAL ISSUE OF FACT ISSUE REGARDING WHETHER RAMPGREEN HAS RIGHTS TO RECOVER AGAINST CARBONITE

In 2012, upon information and belief, vCustomer sold its operations for $27 million. (Carbonite Statement ¶ 13). After this transaction, vCustomer changed its

name to Rampgreen. (vCustomer Statement Ex. C ¶ 1). The Motion offers no evidence to establish that Rampgreen retained rights under the MSA other than vCustomer changed its name to Rampgreen in 2012. (See vCustomer Statement Ex. C ¶ 1 (stating vCustomer changed its name to Rampgreen in 2012)). Nor does it explain why Rampgreen waited from 2012 to 2017 to demand payment of purportedly undisputed amounts.

Carbonite is entitled to the inference that the rights under the MSA were transferred to the buyer of the vCustomer business. Taylor, 2009 WL 2146675, at *4 (on summary judgment, all reasonable inferences must be taken in favor of non-moving party). Indeed, Carbonite never received notice from vCustomer of the transaction and only became aware of vCustomer's sale through articles published at the time of the transaction. (Carbonite Statement ¶ 13). Rampgreen offered in evidence no asset purchase agreement or other documentation indicating what rights vCustomer retained as part of that sale. In the absence of conclusive evidence that Rampgreen owns the rights to recover under the MSA, the Court should deny the Motion. Nourbakhsh v. Melvin, No. 52603-1-I, 2004 WL 1874664, at *4 (Wash. App. Ct. Aug. 23, 2004) (plaintiffs could not sue for breach of contract because they assigned rights to lease to third-party).[2]

Moreover, Carbonite has sought discovery into this very issue. (Declaration Of Nicholas Cassie In Support Of Application Under Rule 56(d) ("Cassie 56(d) Decl.") ¶ 11, Ex. B (Document Request No. 13)). Carbonite intends to take deposition testimony on this issue, but is precluded from doing so until after January 1, 2018. (Scheduling Order

---

[2] The MSA requires the application of Washington law. (MSA ¶ 15.5).

7

(July 12, 2017) (Docket No. 25) at ¶ 3).  There is no dispute that this information is exclusively within vCustomer's possession and Carbonite has no other way of obtaining it.  Accordingly, the Motion should also be denied under Rule 56(d).

II.   THERE ARE MATERIAL ISSUES OF FACT REGARDING WHETHER CARBONITE BREACHED THE MASTER SERVICE AGREEMENT

To succeed on a breach of contract claim on summary judgment, a plaintiff must show that there is no issue of material fact that: (1) there was a valid contract between the parties; (2) the defendant breached an obligation under the contract without excuse; and (3) resulting damages.  Joudeh v. PFAU Cochran Vertetis Amala, PLLC, 190 Wash. App. 1030, 2015 WL 5923961, at *6 (2015) (affirming summary judgment against breach of contract claim).  A party cannot succeed on a breach of contract claim unless it has performed all of its obligations under the contract.  Galyean v. Nw. Tr. Servs. Inc., No. C13-1359 MJP, 2014 WL 1416864, at *9 (W.D. Wash. Apr. 14, 2014) (plaintiff's pre-existing breach of contract defeated its breach claim).  The "primary goal in interpreting contracts is to determine the parties' intent." Anderson Hay & Grain Co. v. United Dominion Indus., Inc., 119 Wash. App. 249, 254 (2003) (affirming dismissal of contract claims).

Rampgreen argues that Carbonite breached the MSA by: (1) not paying an allegedly undisputed amount of $130,444.63 (Motion at 7-9); (2) not paying an additional $32,655.37 in estimated service fees for a period under which vCustomer provided no service (Motion at 9); and (3) applying $20,262.20 in forfeited credits against various invoices under the Customer Rebate Agreement  (Motion at 9-12).  As shown below, in addition to whether vCustomer was in pre-existing material breach, material issues of fact bar summary judgment on all Defendants' primary arguments.

8

A. <u>vCustomer's Prior Material Breach Precludes Rampgreen's Counterclaim</u>

A party cannot succeed on a breach of contract claim unless it has performed all of its obligations under the contract. <u>Galyean</u>, 2014 WL 1416864, at *9. A material breach of contract excuses further performance by the counterparty. <u>Moore v. Blue Frog Mobile, Inc.</u>, No. 62716-3-I151, 2009 WL 2462330, at *4 (Wash. App. Ct. Aug. 10, 2009) (material issue of fact existed regarding whether plaintiff breached severance agreement, which would excuse defendant's payment obligations). There is ample evidence that vCustomer's employee, Mr. Keeler, violated Carbonite customer confidentiality protocol, which likely led to credit card fraud and creates material issues of fact as to whether vCustomer was in pre-existing breach of the MSA thereby excusing Carbonite's payment obligations.

Under the MSA, vCustomer agreed to protect Carbonite's Confidential Information, which included Carbonite customer information. (MSA §§ 11.1, 11.2). Nevertheless, in August 2011, Carbonite learned that Irwin Keeler appeared to have stolen credit card information from a Carbonite customer and used it to make fraudulent charges. (Carbonite Statement ¶¶ 2-5). Carbonite's customer reported that, after using customer support during a transaction that required him to enter his credit card information, that credit card was used to make fraudulent purchases near vCustomer's call center in India where Mr. Keeler worked. (Carbonite Statement ¶ 2-5). Based on Carbonite's investigation, Mr. Keeler demonstrably violated Carbonite customer protection policies by not closing the window-sharing support session while the customer entered his credit card information, allowing Mr. Keeler to observe and copy the entry of the credit card information into a Carbonite screen. (Carbonite Statement ¶

3). Given the short time between that breach of Carbonite policies and the fraudulent use of the Customer's credit card in India, Carbonite concluded that Mr. Keeler stole the customer's credit card data, which led to the fraud. (Carbonite Statement ¶ 2-6).

On this misappropriation, which followed a series of vCustomer's customer service failures, Carbonite terminated the MSA for material breach. (Carbonite Statement ¶ 8). Mr. Keeler's violation of Carbonite policies provides ample basis for the inference that vCustomer was in material breach of the MSA, which forecloses vCustomer's breach of contract claims and the Motion should be denied. Galyean, 2014 WL 1416864, at *9

### B. Carbonite Never Received An Undisputed Invoice Requiring Payment

To prevail on a claim for breach of contract, a plaintiff must demonstrate that it fulfilled all of its obligations under the contract or was excused from doing so. Moore, 2009 WL 2462330, at *4. A plaintiff's failure to perform its obligations excuses a defendant from future performance obligations. Moore, 2009 WL 2462330, at *4.

Rampgreen's argues that it is undisputed that Carbonite owed vCustomer $130,444.63 based on a Carbonite October 4, 2011 Letter (Motion at 7-9). The actual language from that letter makes the payment of that amount conditional:

> This total amount of $130,444.63 will be paid according to the standard net 30 term after an undisputed invoice is received by Carbonite.

(vCustomer Statement Ex. 8 to Ex. C). Rampgreen offers no evidence that vCustomer ever sent such an invoice. (See vCustomer Statement Ex. 4-7 to Ex. C (invoices sent after Carbonite terminated the MSA)). To the contrary, rather than issue the invoice, vCustomer began negotiating the amount Carbonite would pay under other invoices, including credits due under the Customer Rebate Agreement, as well as issues

10

surrounding Carbonite's termination of the MSA. (Carbonite Statement ¶¶ 10-11). As a result of these discussions, Carbonite believed it had settled all disputes and sent vCustomer a written agreement memorializing their agreement, which would have relieved any further payment obligations by Carbonite beyond $130,214.60 and provided releases for Carbonite's payment of that sum. (Carbonite Statement ¶ 11). In response to Carbonite providing that draft settlement agreement, vCustomer never sent the invoice and ceased communicating with Carbonite for five years, until Rampgreen sent a demand letter leading to this lawsuit. (Carbonite Statement ¶¶ 12, 14).

With all inferences read in Carbonite's favor, vCustomer failed to fulfil the condition to be entitled to the $130,444.63. Moreover, the discussions that followed reflected that part of the consideration Carbonite expected for payment of that amount was full resolution of all disputes. In short, Rampgreen failed to eliminate all material issues of fact over Carbonite's obligation to pay $130,444.63 on an invoice that was never sent and the Motion should be denied on that issue as well. See Zimmerman v. W8LESS Prod., LLC, 160 Wash. App. 678, 696–97 (2011) (reversing summary judgment for plaintiff because of material issue of fact regarding payment obligation).

### C. Material Issues Abound In What If Any Payment Is Due To Rampgreen for Services vCustomer Did Not Render

To succeed on a breach of contract claim, a plaintiff must show that it suffered damages stemming from the defendant's breach. Joudeh, 2015 WL 5923961, at *6. The proper measure of damages for a repudiation is the amount a plaintiff would have been entitled to under a contract minus the expenses saved as a result of the breach. Mason v. Mortg. Am., Inc., 114 Wash. 2d 842, 851 (1990) (damages award needed to be reduced by costs saved due to breach); see also, Paduano v. J. C. Boespflug Const.

Co., 66 Wash. 2d 527, (1965) (proper measure of damages must account for costs saved as result of breach).

Rampgreen contends that it is entitled to summary judgment in the amount of $32,655.37 on its claim that Carbonite breached the MSA by failing to pay estimated service fees occurring after Carbonite sent its Notice of Termination, during a time when vCustomer was shut out of the Carbonite system and could provide no services. (Motion at 9). This ignores that, in January 2011, Carbonite terminated the length term of the MSA, which eliminated the MSA's termination provisions and the requirement that Carbonite provide any notice period at all. (Carbonite Statement ¶ 1). The MSA contains no provision calling for payment for periods when services are not rendered, yet Rampgreen claims it is entitled to payment for services not provided between August 26, 2011 and August 31, 2011 based on an estimate of what it thinks vCustomer's fees would have been for those days. (Motion at 9). Moreover, the Motion does not address – an offers no evidence with respect to -- any of the elements to calculate damages under a services contract, avoided costs, expected profit, and the like.

Accordingly, Rampgreen has not met its burden of submitting evidence showing that there is no issue of material fact that it is entitled to $32,655.37 in damages for six days of doing nothing under the MSA or even that there is an entitlement for compensation for doing nothing. See Taylor, 2009 WL 2146675, at *4 (moving party bears burden of submitting evidence showing there is no issue of material fact on each element of its claim); Huzzy, 5. Wash. App. Ct. at 586-87 (setting forth showing needed to establish damages). The Motion should be denied on that failure.

Moreover, Carbonite has sought discovery into this issue and intends to take more. In its first document request, Carbonite has sought discovery on Rampgreen's alleged damages and thus far has received nothing. (Cassie 56(d) Decl. Ex. B). Carbonite also intends to seek deposition testimony -- once it is allowed -- into Rampgreen's contention that it is entitled to damages when vCustomer performed no work and the costs vCustomer saved in not having to perform services. (Cassie 56(d) Decl. ¶ 12). This information is entirely within vCustomer's control and summary judgment on this issue is premature under Rule 56(d).

   D. There Are Material Issues In Rampgreen's Attempt To Claw Back Rebates

"The primary goal in interpreting contracts is to determine the parties' intent." Anderson Hay, 119 Wash. App. at 254. "The parties' intent will be determined from considering the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations advocated by the parties." Anderson Hay, 119 Wash. App. at 254-55. "Generally, what the parties intend is a question of fact." Anderson Hay, 119 Wash. App. at 255. "If there are two or more reasonable meanings to contract language, a question of fact is presented and summary judgment is improper." Anderson Hay, 119 Wash. App. at 255. "Solely, when interpretation does not depend on extrinsic evidence, or when extrinsic evidence leads to one reasonable interpretation, can intent be decided as a matter of law on summary judgment." Anderson Hay, 119 Wash. App. at 255.

Under the Customer Rebate Agreement, vCustomer agreed to both a one-time service rebate of $100,000 and a monthly credit of $12,000 or 5% of an invoice, whichever was greater, for the months from February 2011 through December 2011:

> Client will receive a one-time service rebate of USD 100,000/- (One Hundred Thousand Dollars) credited effective January 1, 2011.  Additional service rebates of up to USD 12,000/0 (Twelve Thousand Dollars) but not to exceed 5% of the invoice, will be offered to the Client each month with regards to actual invoiced services rendered during the period February 2011 through December 2011.  Vcusotmer will be applying a $60k credit to your July invoice and a $60K credit to your December invoice.  We are unable to do a monthly credit for internal P&L management reasons.  I would greatly appreciate it if we could go ahead with this process.
>
> In case of Termination of the Agreement by either party for any reason before the realization of the above mentioned service rebates, the unrealized rebates would stand forfeited and no liability would accrue on the Service Provider in this regard.  Further, the above rebates are one-time only and non-transferable.

(vCustomer Statement Ex. C to Ex. 3 (Customer Rebate Agreement)).  Based on this agreement, vCustomer sent Carbonite monthly credit statements.  (vCustomer Statement ¶ 15).  On summary judgment, vCustomer argues that Carbonite forfeited its rights to credits for when it terminated the Master Services Agreement and seeks damages in the amount of $20,362.20.  (Motion at 9-12).

The Customer Rebate Agreement is susceptible to at least two meanings and thus is ambiguous, requiring a finder-of-fact to interpret it.  Rampgreen's interpretation is that because the rebates were not applied to monthly invoices, Carbonite forfeited its rights to any rebates for the July 2011 through the September 2, 2011 invoices when it terminated the contract.  (Motion at 10-12).  Another reading of the Customer Rebate Agreement is that, at termination, Carbonite was entitled to receive a credit for all months in which vCustomer provided services, thus those credits were "realized," and Carbonite would only forfeit rebates for the remaining term of the Customer Rebate

14

Agreement. This latter interpretation is consistent with vCustomer's acts of sending monthly credit statements after the parties executed the Customer Rebate Agreement. On these differing interpretations of the Customer Rebate Agreement, the Motion must be denied. See Anderson Hay, 119 Wash. App. at 255 (summary judgment inappropriate when contract susceptible to multiple meanings).

Moreover, Carbonite has sought discovery into vCustomer's intent in the negotiation of the Customer Rebate Agreement and vCustomer's understanding of the meaning of its terms. (Cassie 56(d) Decl. ¶¶ 11-12 & Ex. B). This information is solely in vCustomer's control and will likely demonstrate vCustomer's understanding that Carbonite was entitled to rebates for every month that vCustomer provided services, with no claw back of credits. As such, the Motion is premature under Rule 56(d).

E. Carbonite's Recoupment Rights Create Material Issues As To Damages

Under the doctrine of recoupment, a party is entitled to show that any amount it owes another party should be reduced based on harm caused in the same transaction or occurrence. See Nelson & Co. v. Goodrich, 159 Wash. 189, 194 (1930) (allowing recoupment). A material issue of fact regarding whether a non-moving party is entitled to recoupment is enough to defeat a summary judgment motion. Alpacas of Am. LLC v. Groome, No. 46702–0–II, 2016 WL 126430, at *3-4 (Wash. App. Ct. Jan. 12, 2016) (reversing summary judgment because of a material issue of fact on recoupment claim).

Here, Carbonite incurred substantial expenses after discovering Mr. Keeler's apparent theft of Carbonite customer credit card information. Indeed, fifteen Carbonite employees spent 3,865 hours reviewing 4,000 video recordings of customer support sessions to ensure security and regulatory compliance after the theft of its customer's

confidential credit card information. (Carbonite Statement ¶ 6). Carbonite estimates that this cost Carbonite $96,625 and sent vCustomer a record of this expense. (Carbonite Statement ¶ 7). Unless vCustomer is prepared to stipulate to this recoupment amount, there are issues of material fact regarding the amount of recoupment to which Carbonite is entitled.

III. THE MOTION SHOULD BE STAYED OR DENIED UNDER RULE 56(D)

A court may defer ruling upon, or deny, a summary judgment motion if the non-moving party demonstrates that further discovery is needed to adduce facts necessary to oppose the motion. Fed. R. Civ. P. 56(d); In re PHC, Inc. Shareholder Litig., 762 F.3d 138, 143 (1st Cir. 2014) (granting Rule 56(d) motion to allow discovery). A party seeking relief under Rule 56(d) on the grounds of incomplete discovery must: "(1) show good cause to have discovered the facts sooner; (2) set forth a plausible basis for believing that specific facts probably exist; and (3) indicate how the emergent facts will influence the outcome of the pending summary judgment motion." In re PHC, 762 F.3d at 143.

As set forth above, good cause exists for why Carbonite has not completed discovery on facts necessary to oppose the Motion. First, the deadline for the parties to complete document exchanges is January 31, 2018, and the parties are not allowed to take depositions until after January 1, 2018. (Cassie 56(d) Decl. ¶¶ 4, 8). Moreover, shortly after the initial scheduling conference in this matter, which is when discovery could have begun in the first instance, the parties began settlement discussions ahead of a court-facilitated mediation that is scheduled for January. (Cassie 56(d) Decl. ¶ 5). During these discussions, the parties did not exchange discovery requests. (Cassie

56(d) Decl. ¶ 5). Carbonite ultimately served its document request on November 28, 2017, well within the discovery period, and vCustomer has not yet provided responsive documents. (Cassie 56(d) Decl. ¶ 7). Carbonite's document request focuses on a number of the issues raised in the Motion, including what party owns claims against Carbonite under the MSA, evidence of Mr. Keeler's conduct in the hands of vCustomer, vCustomer's negotiation and interpretation of the Customer Rebate Agreement, and vCustomer's negotiations after Carbonite terminated the MSA. (Cassie 56(d) Decl. ¶ 11, Ex. B (Document Requests)). As such, good cause exists as to why Carbonite has not completed discovery on these issues to date.

Carbonite plausibly believes that specific facts exist in vCustomer's possession that will affect the outcome of the Motion. For example, Carbonite believes that discovery will produce confirmatory evidence that Rampgreen is not the holder of any residual rights under the MSA, especially given neither vCustomer nor Rampgreen demanded payment from Carbonite for over five years and nothing in the Motion explains why. (Cassie 56(d) Decl. ¶ 14, Ex. C). Discovery will also likely confirm that vCustomer knew that it was in breach of Carbonite's customer confidential information policies, terminated Mr. Keeler because of it, and then sought to minimize his conduct to avoid responsibility therefore. (Cassie 56(d) Decl. ¶ 15). Carbonite expects that evidence obtained from vCustomer will likely show that vCustomer agreed that the $130,444,63 to be paid by Carbonite was to resolve the parties' entire dispute, including vCustomer's agreement on what was owed under any alleged outstanding invoices, which agreed resolution vCustomer then reneged upon. (Cassie 56(d) Decl. ¶ 16).

These facts in vCustomer's or Rampgreen's exclusive custody and control have a direct bearing on their claim that Carbonite breached the MSA.

Carbonite's discovery is also tailored to show vCustomer's intent in entering into the Customer Rebate Agreement was to allow Carbonite to benefit from monthly rebates to compensate Carbonite for previous over-billing. (Cassie 56(d) Decl. ¶ 17). The Customer Rebate Agreement was the subject of negotiations between the parties after Carbonite claimed that vCustomer had over-billed it for services in 2010. (Cassie 56(d) Decl. ¶ 17). Indeed, discovery into vCustomer is the only way to gain information regarding vCustomer's intent in entering into that agreement. (Cassie 56(d) Decl. ¶ 17). As such, vCustomer is likely to have information relating to the purpose of the Customer Rebate Agreement and its intent and meaning. (Cassie 56(d) Decl. ¶ 17).

Finally, discovery into vCustomer will provide information on the steps vCustomer took after Carbonite terminated the MSA, including identification and location of witnesses, to the extent Rampgreen disputes that vCustomer was in pre-existing breach of the MSA. (Cassie 56(d) Decl. ¶ 18). Indeed, Carbonite plausibly believes that discovery will confirm that after it terminated the MSA, vCustomer investigated and confirmed that Mr. Keeler stole credit card information from a client. (Cassie 56(d) Decl. ¶ 18). As such, vCustomer's motion is premature and should be denied until Carbonite completes discovery on these issues.

## **CONCLUSION**

For the foregoing reasons, Carbonite respectfully requests that the Court deny the Motion or stay it pending Carbonite's completion of discovery.

Dated: December 26, 2017

Respectfully Submitted,
Carbonite, Inc.
By its attorneys,

/s/ Nicholas R. Cassie_____
Irwin B. Schwartz (BBO# 548763)
ischwartz@blaschwartz.com
Nicholas R. Cassie (BBO# 672698)
ncassie@blaschwartz.com
BLA Schwartz, PC
One University Ave., Suite 302B
Westwood, Massachusetts 02090
Phone:  781-636-5000
Fax:     781-636-5090

### Certificate of Service

I, Nicholas R. Cassie, as attorney for Carbonite, Inc. hereby certify that on this 26th day of December 2017, I filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Nicholas R. Cassie
Nicholas R. Cassie